1  MICHAEL J. HADDAD (State Bar No. 189114)
   JULIA SHERWIN (State Bar No. 189268)
2  MAYA SORENSEN (State Bar No. 250722)
   TERESA ALLEN (State Bar No. 264865)
3  HADDAD & SHERWIN LLP
4  505 Seventeenth Street
   Oakland, California 94612
5  Telephone: (510) 452-5500
   Facsimile: (510) 452-5510
6
7  Attorneys for Plaintiff
   CHRISTINA PAULINE LOPEZ
8
9
10              **UNITED STATES DISTRICT COURT**
11             **EASTERN DISTRICT OF CALIFORNIA**
12
13  ISIAH MURRIETTA-GOLDING,          )    No:
    Deceased, THROUGH HIS SUCCESSOR   )
14  IN INTEREST CHRISTINA PAULINE     )
    LOPEZ; and CHRISTINA PAULINE      )
15  LOPEZ, Individually,              )    **COMPLAINT FOR DAMAGES,**
                                      )    **INJUNCTIVE AND DECLARATORY**
16              Plaintiff,            )    **RELIEF, AND DEMAND FOR JURY**
                                      )    **TRIAL**
17  vs.                               )
                                      )
18  CITY OF FRESNO, a public entity, CITY  )
    OF FRESNO POLICE CHIEF JERRY      )
19  DYER, FRESNO POLICE SERGEANT      )
    RAY VILLALVAZO, and DOES 1        )
20  through 10, individually, Jointly and  )
    Severally,                        )
21                                    )
22              Defendants.           )
                                      )
23                                    )
                                      )
24                                    )
                                      )
25  _____ )
26
27
28

COMPLAINT AND JURY DEMAND                                    1

Plaintiff CHRISTINA PAULINE LOPEZ, by and through her attorneys, HADDAD &

SHERWIN LLP, for her Complaint against Defendants, states as follows:

### JURISDICTION

1.     This is a civil rights wrongful death/survival action arising from Defendants'

wrongful shooting, use of excessive force and other wrongful acts on April 15, 2017 resulting in the

death of ISIAH MURRIETTA GOLDING, a sixteen-year-old boy, on April 18, 2017 in the CITY

OF FRESNO, Fresno County, California.  This action is brought pursuant to 42 U.S.C. §§ 1983 and

1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution, as well

as the laws and Constitution of the State of California.  Jurisdiction is founded upon 28 U.S.C. §§

1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.

Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to

hear and decide claims arising under state law.

### INTRADISTRICT ASSIGNMENT

2.     A substantial part of the events and/or omissions complained of herein occurred in

the CITY OF FRESNO, Fresno County, California, and this action is properly assigned to the

Fresno Division of the United States District Court for the Eastern District of California, pursuant to

Civil Local Rule 120(d).

### PARTIES AND PROCEDURE

3.     Plaintiff CHRISTINA PAULINE LOPEZ is the mother of decedent ISIAH

MURRIETTA-GOLDING.  Plaintiff CHRISTINA PAULINE LOPEZ brings these claims

individually and as a Successor in Interest for her son, ISIAH MURRIETTA-GOLDING, deceased,

pursuant to C.C.P. §§ 377.60, 377.30, and federal civil rights law.  CHRISTINA PAULINE LOPEZ

is a resident of the State of California.

4.      Plaintiff CHRISTINA PAULINE LOPEZ brings these claims individually and on behalf of Decedent ISIAH MURRIETTA-GOLDING pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq. which provide for survival and wrongful death actions.  Both the wrongful death and survival claims survive the death of ISIAH MURRIETTA-GOLDING; both arise from the same wrongful act or neglect of another; and such claims are properly joined pursuant to California Code of Civil Procedure § 377.62.  Plaintiff also brings her claims on the basis of 42 USC §§ 1983 and 1988, the United States Constitution, and federal civil rights law.  Plaintiff also brings these claims as Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

5.      Defendant CITY OF FRESNO is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the Fresno Police Department ("FPD") which employs other defendants in this action.

6.      Defendant Chief of Police JERRY DYER ("DYER") at all material times was employed as Chief of Police by Defendant CITY OF FRESNO, and was acting within the course and scope of that employment.  As Chief of Police, Defendant DYER was a policy-making official for the CITY OF FRESNO with the power to make official and final policy for the Fresno Police Department.  Defendant DYER is being sued in his individual capacity.

7.      Defendant SERGEANT RAY VILLALVAZO ("Sgt. VILLALVAZO") at all material times was employed as a law enforcement officer by Defendant CITY OF FRESNO and was acting within the course and scope of that employment.  Sgt. VILLALVAZO, at the time of the shooting, had over twenty years of experience as a FPD officer.  Defendant Sgt. VILLALVAZO is being sued in his individual capacity.

8.      Defendant DOES 1-10 ("Doe Defendants") at all material times were employed as law enforcement officers by Defendant CITY OF FRESNO, and were acting within the course and scope of that employment.  Doe Defendants are being sued in their individual capacities.

9.      Defendant CITY OF FRESNO has refused to produce or show Plaintiff or her counsel any records or videos of this incident, its investigations of it, or the names of involved officers other than Sgt. VILLALVAZO, despite Plaintiff's repeated and lawful requests for such information.  Therefore, the true names and capacities of Defendants sued herein as DOES 1-10 ("DOE defendants") are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names, and Plaintiff will seek leave to amend this complaint to show their true names and capacities when the same are ascertained.  Each DOE defendant was an employee/agent of the CITY OF FRESNO, and at all material times acted within the course and scope of that relationship.

10.      Plaintiff is informed and believes and thereon alleges that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff.  Further, one or more DOE defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including Doe Defendants.

11.      Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

12. At all material times, each Defendant was jointly engaged in tortious activity, and had fundamental involvement and was an integral participant to the events and violations of rights described herein, resulting in the deprivation of Plaintiff's and Decedent's constitutional rights and other harm.

13. The acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices, training, and procedures of the Fresno Police Department.

14. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

15. Plaintiff herein timely and properly filed a government code claim pursuant to Cal. Gov. Code § 910 *et seq.*, and this action is timely filed within all applicable statutes of limitation.

16. This Complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2).

## <u>GENERAL ALLEGATIONS</u>

17. Plaintiff realleges each and every paragraph in this complaint as if fully set forth here.

18. On information made public by the FPD, the following incident took place. On April 14, 2017, four young men got into an argument with two teens at or near a pizza take-out at First & Gettysburg in Fresno, California. The confrontation occurred at about midday. The four young men all got into a car and drove away. The two teens, one of whom allegedly was armed with a handgun, stood at some distance from the car. One of these two teens allegedly fired shots from a handgun at the car as it drove southbound on North First Street, just south of Gettysburg Avenue. According to the FPD, none of the shots struck either the driver or the three other passengers, but gunshots did hit the car. The car crashed into a tree in the median of First Street,

killing the driver, 19-year-old Eugenio Ybarra, of Fresno.  The three passengers were taken to the hospital.[1]

19.     According to the FPD, the next day, Saturday, April15, 2017, FPD officers staked out a home on the 500 block of East San Bruno Avenue in Fresno where it was believed the teens lived.  One of the officers was Sgt. VILLALVAZO, belonging to the FPD's "Street Violence Bureau" (SVB).  On information and belief, the SVB is a plain-clothed, tactical unit that engages in aggressive, "pro-active" policing.  These FPD-SVB officers did not try to enter the home in the 500 block of East San Bruno Avenue because they did not have an arrest or search warrant.  And because the alleged crime had occurred a day before, they could not have invoked the "hot-pursuit" exception, or any other exception, to the Fourth Amendment's warrant requirement.  On information and belief, these FPD-SVB officers only wanted to detain teens from the home to question them about the shooting in which Mr. Ybarra died.

20.     At about 3:30 p.m., the car pulled away from the East San Bruno Avenue home, and the FPD-SVB officers, including Defendant VILLALVAZO, made a "high-risk" traffic stop on the car in the parking lot of the Gallery Plaza at Shaw Avenue and Fresno Street.  There were three teens in the car, including ISIAH MURRIETTA-GOLDING, who was riding in the right front seat. ISIAH was a small boy, about 5'4" and 109 lbs., and visibly Latino.  On information and belief, Defendant VILLALVAZO and the FPD-SVB officers believed that some other teen had fired the shot toward the other car on the day before, and they lacked reasonable suspicion to detain, or probable cause to arrest, ISIAH MURRIETTA-GOLDING in connection with that shooting.  The teens in the pulled-over car initially complied with the FPD-SVB officers, including to walk backwards towards the officers with their hands raised, while Defendant VILLALVAZO and the FPD-SVB officers (including Doe Defendants) held them at gunpoint.  But then ISIAH took off

[1] http://www.fresnobee.com/news/local/crime/article144685709.html

COMPLAINT AND JURY DEMAND                                                                 6

running.  He ran north through the parking lot and then east across Fresno Street.  ISIAH was unarmed and holding a hat in his right hand.  The two other teens did not flee.  At the time that ISIAH fled on foot, Defendant VILLALVAZO and DOE Defendants had no legal justification to point guns at ISIAH, and no legal justification to seize ISIAH at gun point.  ISIAH exercised his right to self-defense and to non-violently resist Defendants' attempts to unlawfully seize him.

21.     Defendant VILLALVAZO began a foot pursuit of ISIAH.  Other DOE Defendants also accompanied Sgt. VILLALVAZO on the foot pursuit.  Throughout this foot pursuit, ISIAH never threatened any officer or person, nor did he ever display any weapon or make any threatening gestures.  Defendant VILLALVAZO and the other officers pursuing ISIAH had no objective facts specific to ISIAH to believe that ISIAH was armed or any threat to them.  Without legal justification or cause, the officers pursued ISIAH through a shopping center, and ISIAH ran towards the New Life Discovery Preschool at Fresno Street and Keats Avenue. The preschool's hours are 10 a.m. to 5 p.m., Monday through Friday.  Because it was a Saturday, the preschool was closed, with no one there, and the parking lot was empty.  On information and belief, as he ran after ISIAH, Sgt. VILLALVAZO and the other DOE Defendants were aware that the preschool was closed, and that no one was on the preschool grounds.

22.     ISIAH jumped a fence surrounding the preschool, and continued running towards the back of the New Life Discovery Preschool.  Sgt. VILLALVAZO pursued him to the fence, but did not jump over it.  ISIAH was wearing loose-fitting trousers or shorts, which, on information and belief, were starting to fall down because he was running.  Isiah may have reached with his left hand to pull up his loose-fitting trousers or shorts, or he may have glanced backwards towards Sgt. VILLALVAZO.  No reasonable officer would have interpreted either movement as posing an immediate threat to anyone's safety.  Sgt. VILLALVAZO drew his duty pistol, and while ISIAH ran away from Sgt. VILLALVAZO, with ISIAH's back towards him, and while ISIAH was up to

100' away, Sgt. VILLALVAZO aimed his duty weapon at the back of ISIAH's head.  Sgt. VILLALVAZO fired a single shot, which tore through ISIAH's occipital lobe.  Afterwards, Sgt. VILLALVAZO would claim that ISIAH was "reaching for his waistband" and was afraid that ISIAH was going to shoot him.  As any reasonable officer under these circumstances would know, Defendant VILLALVAZO's subjective fear was not objectively reasonable, because he had no objective facts to believe that ISIAH was armed or reaching for any weapon.

23.     Defendant DOES present during the shooting had the opportunity to intervene both verbally and physically to stop this use of excessive force by Defendant Sgt. VILLALVAZO and/or others, and did not intervene.

24.     When he was shot and laying on the ground, ISIAH was in need of urgent medical care and in the custody of Defendant VILLALVAZO and DOES.  Despite the life-threatening injury ISIAH had sustained, Defendant VILLALVAZO and DOES did not provide ISIAH with any medical assistance, but rather approached him to frisk and then handcuff him as he lay, shot in the head, and obviously severely wounded on the ground.  Several minutes elapsed before Defendant VILLALVAZO and DOES took any steps to provide, request, seek, or secure first aid for ISIAH.  Upon information and belief, at least eight minutes went by before paramedics arrived to take ISIAH to the hospital.  Once on scene, they assessed ISIAH at a Glascow Coma Scale of 6.  He was unconscious.  His breathing was weak.  Although he was in critical need of emergency medical care and posed zero risk of escape and zero threat to anyone, VILLALVAZO and DOE officers refused the request of ambulance personnel to remove the handcuffs.  Instead, VLLALVAZO and DOE officers told ambulance personnel that the handcuffs would be removed by FPD only after ISIAH was at the hospital.

25.     ISIAH was taken to Fresno Community Medical Center, where after he and his mother, Plaintiff LOPEZ, suffered for three days, ISIAH died on April 18, 2017.

26.     Defendant Sgt. VILLALVAZO failed to give any warning to ISIAH before using deadly force, even though a warning would have been feasible and proper.

27.     At the time that Defendant Sgt. VILLALVAZO fired a gunshot at ISIAH, the teenager did not pose a significant and immediate threat of death or serious physical injury to Defendants or to anyone else, because he was running away from Defendants, including Sgt. VILLALVAZO, with his back towards them.  Defendant VILLALVAZO had no facts to believe that ISIAH was armed or had any intent to harm anyone.  ISIAH was unarmed.  No reasonable officer would have believed that anything ISIAH might have done under the circumstances – including pulling up his pants, or allegedly moving one hand toward his pants waistband, or briefly looking back – justified the use of deadly force.  Further, ISIAH was not engaged in, or wanted for, any crime.  And, ISIAH's flight from Defendants was lawful due to Defendants' unlawful precipitating acts.  The use of deadly force, including Defendant VILLALVAZO's gunshot described herein, was not justified or lawful under the circumstances.

28.     Alternatively, or concurrently, Defendant Sgt. VILLALVAZO and DOES' own excessive and unreasonable actions created a risk of harm to ISIAH, created the situation in which Defendant Sgt. VILLALVAZO decided to use deadly force, and under the totality of circumstances caused an escalation of events leading to the shooting death of ISIAH.

29.     Alternatively, or concurrently, Defendant Sgt. VILLALVAZO and DOES were integral participants in the use of deadly force, including the gunshot described herein, against ISIAH.  Further, each of these Defendant Officers failed to intervene to stop, prevent, or report the use of excessive and unreasonable force and tactics by other officers.

30.     Defendant Sgt. VILLALVAZO's and DOES' conduct herein, including but not limited to their decision(s) to stop and seize ISIAH, the manner in which they conducted that stop and seizure; Defendants' gun points at ISIAH; Sgt. VILLALVAZO's use of deadly force;

Defendants' failure to provide care for the serious medical needs of their detainee; and their other conduct, was contrary to generally accepted reasonable police procedures and tactics, and caused the wrongful death of ISIAH.

31.    At all material times, and alternatively, the actions and omissions of each defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to Plaintiff's and Decedent's rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

32.    As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff sustained the following injuries and damages, past and future, among others:

  a.    Wrongful death of ISIAH MURRIETTA GOLDING;

  b.    Hospital and medical expenses (Survival claims);

  c.    Coroner's fees, funeral and burial expenses (Survival claims);

  d.    Loss of familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support (wrongful death and loss of familial association);

  e.    Pain and Suffering, including emotional distress (Plaintiff CHRISTINA PAULINE LOPEZ, based on individual § 1983 claim for loss of familial association);

  f.    ISIAH MURRIETTA GOLDING's loss of life, pursuant to federal civil rights law (Survival claims); and

  g.    ISIAH MURRIETTA GOLDING's conscious pain and suffering, pursuant to federal civil rights law (Survival claims);

  h.    Violation of constitutional rights;

  i.    All damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§ 1983, 1988; California Civil Code §§ 52, 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

**COUNT ONE**
**-- 42 U.S.C. § 1983 --**
**PLAINTIFFS AGAINST DEFENDANT SGT. VILLALVAZO, AND DOES 1–10**

33.     Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

34.     By the actions and omissions described above, Defendant Sgt. VILLALVAZO and DOES 1-10 violated 42 U.S.C. § 1983, depriving decedent ISIAH MURRIETTA GOLDING of the following clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the U.S. Constitution:

      a.   The right to be free from unreasonable searches and seizures, including unlawful detention and arrest, as secured by the Fourth Amendment;

      b.   The right to be free from excessive and unreasonable force, including deadly force, in the course of arrest or detention as secured by the Fourth Amendment;

      c.   The right to be free from unlawful, reckless, deliberately indifferent, and conscience shocking deadly force as secured by the Fourteenth Amendment (as the predicate for CHRISTINA PAULINE LOPEZ's familial association claim, described in the next paragraph).

35.     By the actions and omissions described above, Defendant Sgt. VILLALVAZO and DOES 1-10 violated 42 U.S.C. § 1983, depriving Plaintiff CHRISTINA PAULINE LOPEZ of the following clearly-established and well-settled constitutional rights protected by the First and Fourteenth Amendments to the U.S. Constitution:

      a.   The right to be free from wrongful government interference with familial relationships, and Plaintiff's right to companionship, society and support of her son, ISIAH MURRIETTA GOLDING, as secured by the First and Fourteenth Amendments to the U.S. Constitution.

36.     Defendants subjected Plaintiff and Decedent to their wrongful conduct, depriving Plaintiff and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff (individually and on behalf of ISIAH MURRIETTA GOLDING, Deceased) and others would be violated by their acts and/or omissions.

37.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained injuries and damages as set forth at ¶ 32, above.

38.     The conduct of Defendant Sgt. VILLALVAZO and DOES 1-10 entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and Cal. Code of Civil Procedure § 377.20 et seq.  Plaintiff does not seek punitive damages against Defendant CITY OF FRESNO.

39.     Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and applicable California codes and laws.

**COUNT TWO**
**- 42 U.S.C. § 1983 –**
**PLAINTIFF AGAINST DEFENDANTS CITY OF FRESNO,**
**CHIEF OF POLICE JERRY DYER, AND DOES 1-10**

40.     Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

41.     The unconstitutional actions and/or omissions of Defendant Sgt. VILLALVAZO, and DOES 1-10, as well as other officers employed by or acting on behalf of Defendant CITY OF FRESNO, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the FPD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officers for CITY OF FRESNO and the FPD, including Chief of Police Jerry DYER:

     a.    To use or tolerate the use of unlawful deadly force including permitting and affirmatively training officers (i) to use deadly force when faced with less than an immediate threat of death or serious bodily injury; (ii) to use deadly force prematurely, or as a "first resort," or when facing a mere potential threat; and (iii) to use deadly force without giving a proper warning when one would be feasible;

     b.    To tolerate a pattern of deadly force by FPD officers based largely on officers' claims that the person they shot had reached for their waistband;

     c.    To cover-up violations of constitutional rights by any or all of the following:

      i.  by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, officer-involved shootings, law enforcement related deaths, and unlawful seizures;

      ii.  by failing to promptly, independently, thoroughly, and properly investigate and address officer involved shootings and other law enforcement related deaths;

      iii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

      iv. by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information;

   d.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and,

   e.   To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct made under California Government Code § 910 et seq.;

   f.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a) through (e) above, with deliberate indifference to the rights and safety of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, and training programs to prevent recurring and foreseeable violations of rights of the type described herein.

42.     Defendants CITY OF FRESNO, Chief DYER, and Does 1-10 failed to properly train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Sgt. VILLALVAZO, and DOES 1-10, and other FPD personnel, with deliberate indifference to Plaintiff's constitutional rights, which were thereby violated as described above.

43.     The unconstitutional actions and/or omissions of Defendants Sgt. VILLALVAZO, DOES 1-10, and other FPD personnel, as described above, were approved, tolerated and/or ratified by policy-making officers for the FPD, including Chief DYER.  Plaintiff is informed and believe,

and thereupon alleges, the details of this incident have been revealed to the authorized policy makers within CITY OF FRESNO and the FPD, and that such policy makers have direct knowledge of the fact that the ISIAH MURRIETTA GOLDING shooting was not justified, but rather represented an unconstitutional use of unreasonable, excessive and deadly force.  Notwithstanding this knowledge, the authorized policy makers within CITY OF FRESNO and the FPD have approved Defendant Sgt. VILLALVAZO's shooting of ISIAH MURRIETTA GOLDING, and have made a deliberate choice to endorse Defendant Sgt. VILLALVAZO's shooting of ISIAH MURRIETTA GOLDING and the basis for that shooting.  By so doing, the authorized policy makers within CITY OF FRESNO and the FPD, and Chief DYER, have shown affirmative agreement with Defendant Sgt. VILLALVAZO's actions, and have ratified the unconstitutional acts of Defendant Sgt. VILLALVAZO.

44.     The prior supervisory failures and deliberate indifference of Chief DYER and DOES 1–10 were also a proximate cause of and moving force behind the violations of ISIAH MURRIETTA GOLDING's and Plaintiff's rights by Defendants VILLALVAZO and DOES 1–10. Defendants Chief DYER and DOES 1–10 were responsible for creating, approving, and enforcing the unconstitutional customs and policies described in paragraph 41, above, that were a proximate cause and moving force of the individual Defendants' violations of rights and Plaintiff's and Decedent's injuries; (2) Chief DYER and DOES 1–10 were responsible to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants VILLALVAZO and DOES 1–10, but due to their deliberate indifference to the substantial risk of harm to the public, including people situated like Plaintiff and Decedent, Chief DYER and DOES 1–10 failed to reasonably, adequately, and appropriately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants VILLALVAZO and DOES 1–10; and (3) Chief DYER and DOES 1–10 ratified the Defendant officers' conduct and decisions in this matter as described in

paragraph 43, above, after being fully informed of such and the basis for them, and after viewing the videos of the shooting, thereby affirming Defendant officers' choices, unconstitutional decisions, and the bases for those unconstitutional decisions.

45.     The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of Defendants CITY OF FRESNO, Chief DYER, and Does 1-10, were a moving force and/or a proximate cause of the deprivations of Plaintiff's clearly-established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth in ¶¶ 34-35, above.

46.     Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff and decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions.

47.     As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants CITY OF FRESNO, Chief DYER, and Does 1-10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs and attorneys' fees as set forth in ¶¶ 37-39, above, including punitive damages against Chief DYER.  Plaintiff does not seek punitive damages against the CITY OF FRESNO

**COUNT THREE
-- VIOLATION OF CIVIL CODE §52.1 --
PLAINTIFF AGAINST DEFENDANT SGT. VILLALVAZO AND CITY OF FRESNO**

48.     Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

49.     Plaintiff CHRISTINA PAULINE LOPEZ brings this "Bane Act" claim individually for direct violation of her own rights (her familial association claim based on Defendants intentional

shooting of her son without a legitimate law enforcement purpose in a manner that shocks the conscience), and as a survival claim pursuant to California Code of Civil Procedure § 377.20 *et seq.* for violation of ISIAH MURRIETTA GOLDING's and her own rights.

50.     By his conduct described herein, Defendant Sgt. VILLALVAZO, acting in concert/conspiracy, as described above, violated Plaintiff's and Decedent's rights under California Civil Code §52.1, and the following clearly-established rights under the United States Constitution and the California Constitution:

        a.   ISIAH MURRIETTA GOLDING's right to be free from unreasonable searches and seizures as secured by the Fourth Amendment to the United States Constitution and by Article I, § 13 of the California Constitution (Survival claim only of Plaintiff CHRISTINA PAULINE LOPEZ);

        b.   ISIAH MURRIETTA GOLDING's right to be free from excessive and unreasonable force in the course of arrest or detention, as secured by the Fourth Amendment to the United States Constitution and by Article 1, § 13 of the California Constitution (Survival claims only of Plaintiff CHRISTINA PAULINE LOPEZ);

        c.   ISIAH MURRIETTA GOLDING's right to be free from the unreasonable use of deadly force as secured by the Fourth Amendment to the United States Constitution and by Article 1, § 13 of the California Constitution (Survival claim of Plaintiff CHRISTINA PAULINE LOPEZ);

        d.   Plaintiff CHRISTINA PAULINE LOPEZ's and ISIAH MURRIETTA GOLDING's right to be free from wrongful government interference with familial relationships, and Plaintiff's and Decedent's right to companionship and society with each other, as secured by the First and Fourteenth Amendments to the United States Constitution (Plaintiff CHRISTINA PAULINE LOPEZ's individual and survival claims); and

        e.   The right to protection from bodily restraint, harm, or personal insult, as secured by Cal. Civil Code § 43 (Plaintiff CHRISTINA PAULINE LOPEZ's individual and survival claims).

51.     Unlawful deadly force which violates the Fourth Amendment violates the Bane Act.[2]
Defendants' use of unlawful deadly force against ISIAH MURRIETTA GOLDING, in and of itself,
satisfies the "by threat, intimidation, or coercion" requirement of the Bane Act.

52.     Further, any volitional, intentional violation of rights also satisfies the "by threat,
intimidation, or coercion" requirement of the Bane Act.[3]  All of Defendants' violations of duties
and rights were volitional, intentional acts; none was accidental or merely negligent.

53.     Alternatively, Defendants violated Plaintiff CHRISTINA PAULINE LOPEZ's and
ISIAH MURRIETTA GOLDING's rights by the following conduct constituting threat,
intimidation, or coercion that was above and beyond any lawful seizure or use of force:

a.  Threatening ISIAH MURRIETTA GOLDING in the absence of any threat presented
    by ISIAH MURRIETTA GOLDING, or any justification whatsoever;

b.  Using deliberately reckless and provocative tactics to apprehend ISIAH
    MURRIETTA GOLDING in violation of generally accepted law enforcement
    training and standards, and in violation of ISIAH MURRIETTA GOLDING's rights;

c.  Defendant Sgt. VILLALVAZO and DOES 1-10 pointing their guns at ISIAH
    MURRIETTA GOLDING in the absence of any threat or justification whatsoever;

d.  Threatening violence against ISIAH MURRIETTA GOLDING, with the apparent
    ability to carry out such threats, in violation of Civ. Code § 52.1(j);

e.  Using excessive, unreasonable and unjustified force against ISIAH MURRIETTA
    GOLDING by firing a gunshot at ISIAH MURRIETTA GOLDING, with specific
    intent to kill, in the absence of any immediate threat;

f.  Denying ISIAH MURRIETTA GOLDING prompt and necessary medical care after
    Defendant Sgt. VILLALVAZO shot ISIAH MURRIETTA GOLDING while ISIAH
    MUIRRIETTA GOLDING was his arrestee, in desperate need of such care, and
    unable to provide or obtain such care for himself;

g.  Failing to intervene to stop, prevent, or report the unlawful seizure and use of
    excessive and unreasonable force by other officers;

_____

[2] *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. May 19, 2014) (citing
*Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013)).

[3] *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766, 801-02 (2017) (*review denied*).

COMPLAINT AND JURY DEMAND                                                                                    17

h.  Creating, through their own excessive and unreasonable actions, a risk of harm to ISIAH MURRIETTA GOLDING, by Defendants Sgt. VILLALVAZO and DOES 2-10s' decision to use deadly force, and officers' wrongful conduct causing an escalation of events that led to the shooting death of ISIAH MURRIETTA GOLDING;

i.  Violating Plaintiff CHRISTINA PAULINE LOPEZ's and ISIAH MURRIETTA GOLDING's rights to familial association by their use of conscience-shocking excessive force and provocative tactics without any legitimate law enforcement purpose.

54.   Defendant CITY OF FRESNO is vicariously liable, pursuant to California Government Code § 815.2, for the violation of rights by its employees and agents.

55.   As a direct and proximate result of Defendants' violation of California Civil Code §52.1 and of Plaintiff's and Decedent's rights under the United States and California Constitutions, Plaintiff (individually and as Successor in Interest) sustained injuries and damages, and against Defendant Sgt. VILLALVAZO and CITY OF FRESNO is entitled to relief as set forth above at ¶¶ 35–38, including punitive damages against Defendant Sgt. VILLALVAZO, and including all damages allowed by California Civil Code §§ 52, 52.1, and California law, not limited to costs, attorneys fees, treble damages, and civil penalties.

## COUNT FOUR
## -- NEGLIGENCE; PERSONAL INJURIES --
## <u>PLAINTIFFS AGAINST DEFENDANTS SGT. VILLALVAZO, DOES 1-10</u>
## <u>AND CITY OF FRESNO</u>

56.   Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

57.   At all times, Defendant Sgt. VILLALVAZO, and DOES 1-10 owed Plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

58.   At all times, Defendant Sgt. VILLALVAZO, DOES 1-10 owed Plaintiff the duty to act with reasonable care.

59.     These general duties of reasonable care and due care owed to Plaintiff by Defendants include but are not limited to the following specific obligations:

      a.    to refrain from using excessive and/or unreasonable force against ISIAH MURRIETTA GOLDING;

      b.    to refrain from unreasonably creating the situation where force, including but not limited to deadly force, is used;

      c.    to refrain from abusing their authority granted them by law;

      d.    to refrain from violating Plaintiff's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

60.     Additionally, these general duties of reasonable care and due care owed to Plaintiff by Defendant CHIEF DYER and Does 1-10, include but are not limited to the following specific obligations:

      a.    to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

      b.    to make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiff's and Decedent's.

      c.    to refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth at paragraph 41, above.

61.     Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiff.

62.     Defendant CITY OF FRESNO is vicariously liable for the wrongful acts and omissions of its employees and agents pursuant to Cal. Gov. Code section 815.2.

63.     As a direct and proximate result of Defendants' negligence, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above at

¶¶ 35–38, including punitive damages against Defendants Sgt. VILLALVAZO, DOES 1-10, and Chief DYER, in their individual capacities.

**COUNT FIVE**
**-- ASSAULT AND BATTERY --**
**PLAINTIFF AGAINST DEFENDANT SGT. VILLALVAZO**
**AND CITY OF FRESNO**

64.     Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

65.     The actions and omissions of Defendant Sgt. VILLALVAZO as set forth above constitute assault and battery.

59.     As a direct and proximate result of Defendants' assault and battery of ISIAH MURRIETTA GOLDING, Plaintiff sustained injuries and damages, and is entitled to relief as set forth above at ¶ 35-38, including punitive damages against Defendant Sgt. VILLALVAZO.

WHEREFORE, Plaintiff respectfully request the following relief:

    a.     against each and every Defendant herein, jointly and severally, compensatory and exemplary damages in an amount according to proof and which is fair, just and reasonable;

    b.     against Defendants Sgt. VILLALVAZO, DOES 1-10, and Chief DYER, in their individual capacities, punitive damages under 42 U.S.C. § 1983 and California law in an amount according to proof and which is fair, just, and reasonable;

    c.     against each and every Defendant, jointly and severally, all other damages, penalties, costs, interest, and attorney fees as allowed by 42 U.S.C. §§ 1983 and 1988, Cal. Code of Civ. Proc. §§ 377.20 et seq., 377.60 et seq., 1021.5, Cal. Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by California and/or federal law;

    d.     Injunctive relief, including but not limited to the following:

        i.     an order prohibiting Defendants CITY OF FRESNO from engaging in the unconstitutional customs, policies, practices, procedures, training and supervision as may be determined and/or adjudged by this case;

1              ii.  an order requiring Defendant CITY OF FRESNO to institute and enforce appropriate and lawful policies and procedures for the use of deadly force;

              iii.  an order prohibiting Defendants and their deputies and police officers from engaging in the "code of silence" as may be supported by the evidence in this case;

              iv.  an order requiring Defendant CITY OF FRESNO to train all law enforcement officers concerning generally accepted and proper tactics and procedures and this Court's orders concerning the issues raised in injunctive relief requests i-iii, above;

    e.      Declaratory relief; and

    f.      such other and further relief as this Court may deem appropriate.

DATED: March 6, 2018           HADDAD & SHERWIN LLP

                                  /s/ *Michael J. Haddad*
                                  MICHAEL J. HADDAD
                                  Attorneys for Plaintiff
                                  CHRISTINA PAULINE LOPEZ

1

2

**<u>JURY DEMAND</u>**

3      Plaintiff hereby requests a trial by jury.

4

5   DATED: March 6, 2018                    HADDAD & SHERWIN LLP

6

7                                           /s/ *Michael J. Haddad*
                                            MICHAEL J. HADDAD
8                                           Attorneys for Plaintiff
                                            CHRISTINA PAULINE LOPEZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28